USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 13, 2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

   - v. -

CHARLIE JIMINEZ,
  a/k/a "350,"
  a/k/a "Gucci,"

                    Defendant.
------------------------------------------------------------------X

13 Cr. 847 (KBF)

OPINION & ORDER

**KATHERINE B. FORREST**, United States District Judge:

      Charlie Jiminez was indicted, along with 10 others, on October 31, 2013. He and his co-defendants were charged with participation in a narcotics conspiracy, in violation of 21 U.S.C. § 846 (Count One), as well as with the use, carrying, and possession of firearms that were brandished and discharged during and in relation to the narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2 (Count Two). (ECF No. 1.) This matter was transferred to the undersigned on March 10, 2015. It is scheduled for trial commencing July 6, 2015.

      By order dated March 12, 2015, this Court requested that all defendants notify the Court as to whether any motions remained unresolved. (ECF No. 121.) Pending before the Court is the only motion brought to the Court's attention in response to this Order (and following subsequent communications by letter, as set forth on the docket). Jiminez has moved for the following relief:

    1.    Additional discovery and a bill of particulars;

    2.    Disclosure of identifications and co-defendant statements;

      3.      Severance from his co-defendants; and

      4.      Any other and further relief as may be appropriate based on the arguments of his co-defendants, made in separate motions and incorporated by reference.

(ECF No. 57.) On January 27, 2015, Jiminez filed a separate motion to suppress his post-arrest statement. (ECF No. 106.) He submitted a sworn affidavit in connection with that motion. (ECF No. 108.)

For the reasons set forth below, Jiminez's motions are DENIED.

I.  FACTS RELEVANT TO THE PENDING MOTIONS

The Government has proffered that at trial it will prove that defendant and his co-defendants were members of a drug trafficking organization ("DTO") known as "2 Gunz Up" or "Riverdale" (the "Riverdale crew"). The conspiracy is alleged to have existed and operated from approximately 2006 until a takedown in 2013, and to have principally dealt in crack cocaine. According to the Government, the Riverdale crew sold crack and also took actions to prevent incursion by others into their territory. Certain members of the crew, including Jimenez, are alleged to have maintained firearms in furtherance of the DTO's operations. Certain defendants, including Jiminez, are specifically alleged to have been "shooters" for the DTO, and to have utilized firearms acquired by other members of the crew.

Until approximately August 2011, the Riverdale crew engaged in violent disputes with a rival gang. The disputes resulted in multiple shootings, beatings, stabbings, and assaults.

The Government has proffered that at trial it intends to call numerous cooperating witnesses and local and federal law enforcement officers.  It has also proffered that it intends to offer, <u>inter alia</u>, post-arrest statements, plea allocutions, video and audio recordings of controlled drug buys, narcotics seized from various defendants, photographs, records from social media sites, and cell site materials.

As to defendant Jiminez, the Government has disclosed a variety of information supporting its allegations—including through production of Rule 16 discovery (including search warrant and cell site materials), information disclosed in the Indictment, as well as conversations with defense counsel.  According to the Government, it has disclosed that:

1. Multiple cooperating witnesses will testify that Jiminez was affiliated with the Riverdale crew;

2. The cooperating witnesses will testify that Jimenez was an active seller of crack in the subject areas from in or about 2005;

3. The cooperating witnesses will describe particular occasions on which they saw Jiminez engage in drug transactions;

4. They will testify that they saw Jiminez packaging gram quantities of crack for resale;

5. The cooperating witnesses will describe seeing Jiminez commit acts of violence against rival gang members; and

6. Jiminez is on an audio recording (dated October 8, 2013) in which he discusses cooking crack with a co-conspirator.  That conversation led to a search of the co-conspirator's apartment and a seizure of over 60 grams of crack and 3 firearms.

(Government's Omnibus Opposition to the Defendants' Pretrial Motions ("Gov't Opp.") at 4, ECF No. 70.)  In addition, the Government has provided defendant with

reports related to his prior arrests and informed his prior counsel that it may seek to introduce facts underlying some of those arrests as conduct committed in furtherance of the charged narcotics conspiracy. (Gov't Ltr. dated April 16, 2015 at 2, ECF No. 137.) Those reports include documents concerning a March 2004 arrest of Jimenez for gun possession in the territory controlled by the Riverdale crew, during which a .25-caliber firearm was seized. (Id.) The Government has also proffered the evidence it has relating to the direct involvement of other members of the alleged conspiracy. (See Gov't Opp. at 4-6.)

II. DISCUSSION

    A.    <u>Discovery</u>

Since the outset of this case, defendant Jiminez along with his co-defendants have argued that they have had insufficient discovery. The Court finds that—based on the extensive disclosures recited in the Government's opposition to this motion, its review of transcripts of proceedings before Judge Karas at which discovery issues were discussed, and the September 5, 2014 letter the Government provided to prior counsel for Jiminez (Ex. A to ECF No. 137, filed under seal)—the Government has met its discovery obligations. A bill of particulars is unnecessary—the Government has provided the required level of detail as to the nature of the charges against defendant to enable him to prepare for trial, to prevent surprise, and to preclude a second prosecution for the same offense. <u>United States v. Bortnovsky</u>, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted).

In addition, to the extent that defendant's motion seeks discovery of how he was identified, the Government has mooted that issue by proffering that

cooperating witnesses and confidential sources identified Jiminez's photograph from among dozens of others included in a photo book. (Gov't Opp. at 38-39.) The Government proffered its methodology as to those identifications in a brief filed over a year ago, and defendant has not raised any specific concerns with that process.

Finally, defendant's demand for co-defendant statements is inappropriate—at least at this pre-trial juncture. The law is clear that such statements are not discoverable under Rule 16. See United States v. Percevault, 490 F.2d 126, 129 (2d Cir. 1974) (Rule 16 "was intended to permit the defendant liberal discovery only of his own statements in the government's possession." (emphasis added)); In re United States, 834 F.2d 283, 287 (2d Cir. 1987) ("[W]e hold that, as to the district court's order for the production of statements of government witnesses, the Jencks Act controlled, and the district court had no inherent power to modify or amend the provisions of that Act." (citations omitted)); id. at 286 n.2 (subject to Brady, "if the Government d[oes] not intend to call anyone to testify concerning coconspirators' statements, they [are] not discoverable at all").

B. Motion to Sever

Defendant's motion to sever is without merit. To start, a number of Jiminez's co-defendants have already pled guilty, and it is anticipated that others will as well. Thus, it is unclear at this time that he will be proceeding to trial with any other defendants. In any event, this case presents precisely the type of circumstances when a joint trial of co-defendants is appropriate. Here, Jiminez is accused of being one of a number of members of a drug trafficking conspiracy. The law has long

5

allowed conspirators to be indicted and tried together in such circumstances.  See Fed. R. Crim. P. 8(b) (providing that a single indictment "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses"); United States v. Attanasio, 870 F.2d 809, 815 (2d Cir. 1989) (interpreting Rule 8(b) to allow joinder of defendants whose acts are "unified by some substantial identity of facts or participants," or "arise out of a common plan or scheme" (citations and internal quotation marks omitted)).  There are no special facts as to Jiminez or any of the other co-conspirators which suggest to this Court that severance would be necessary.  Defendant has not raised any particular facts in support of his motion in this regard at all.[1]  In the absence of such facts, a joint trial is both appropriate and preferable.  See Zafiro v. United States, 506 U.S. 534, 537 (1993) ("Joint trials 'play a vital role in the criminal justice system.'  They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" (quoting Richardson v. Marsh, 481 U.S. 200, 209, 210 (1987))); United States v. Feyrer, 333 F.3d 110, 114 (2d Cir. 2003) ("For reasons of economy, convenience and avoidance of delay, there is a preference in the federal system for providing defendants who are indicted together with joint trials." (citations omitted));

---

[1] Defendant argues that "evidence of sales committed by other defendants risks impermissibly creating the illusion of a 'conspiracy' between Mr. Jiminez and those defendants, even if there is a paucity of evidence substantiating such a conspiracy." (Memorandum of Law on Behalf of Charlie Jiminez in Support of Pre-Trial Motions ("Def.'s Br.") at 3, ECF No. 59.)  However, evidence of the criminal activities of other members of the Riverdale crew is proof of the existence of the charged conspiracy—and thus is admissible against defendant, even if he were tried alone.  See United States v. Salameh, 152 F.3d 88, 111 (2d Cir. 1998) ("Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." (citation omitted)).

Salameh, 152 F.3d at 115 (the preference for joint trials is "particularly strong where . . . the defendants are alleged to have participated in a common plan or scheme" (citations omitted)).

    C.    <u>Motion to Suppress</u>

Defendant's motion to suppress is moot as the Government has represented that it does not intend to offer his post-arrest statement at trial. (ECF No. 157.)

III.    CONCLUSION

For the reasons set forth above, defendant's pending motions are DENIED. As there has been some confusion as to which motions were pending, counsel for Jiminez is specifically to raise with the Court within **three business days** if any particular motion remains unresolved. As to any such remaining motion, counsel shall state the docket entry at which such motion was made and the topic of the motion.

The Clerk of Court is directed to terminate the motions at ECF Nos. 57 and 106.

SO ORDERED:

Dated:    New York, New York
            May 13, 2015

                                      KATHERINE B. FORREST
                                      United States District Judge